No. 95-430

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

GARY D. FINDLEY and CAROLYN FINDLEY,
husband and wife, formerly d/b/a
KINGS HILL YOUTH HOME (KHYH),

      Plaintiffs and Appellants,

    v.

MONTANA THIRTEENTH JUDICIAL DISTRICT
COURT, YELLOWSTONE COUNTY; YOUTH
COURT SERVICES. DIVISION OF THE
MONTANA JUDICIAL COURT, YELLOWSTONE
COUNTY,

      Defendants and Respondents.

APPEAL FROM:    District Court of the First Judicial District,
                In and for the County of Lewis and Clark,
                The Honorable Dorothy McCarter, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          Patrick F. Flaherty, Great Falls, Montana

          Steven T. Potts, Jardine, Stephenson, Blewett
          & Weaver, P.C., Great Falls, Montana

      For Respondent:

          Dennis Paxinos, Yellowstone County Attorney,
          Billings, Montana

FILED

JUL 18 1996

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

Filed:

Submitted on Briefs:  June 17, 1996

Decided:  July 18, 1996

_____
Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

Gary D. Findley and Carolyn Findley appeal a judgment of the First Judicial District Court, Lewis and Clark County, denying their contract claim against Youth Court Services of the Thirteenth Judicial District Court (YCS) We affirm.

The issues are:

1. Did the parties enter into a contract requiring YCS to pay $41 per day or an otherwise reasonable amount in return for the Findleys' services?

2. Did the District Court err in finding that Carolyn Findley filled in the contract rate of $41 on October 4, 1985?

3. Did the court err by finding that the Findleys' compensation was limited to sums paid by a non-party to the contract?

4. Did the court err by concluding there was no evidence that YCS ratified the contract?

5. Did the court err by concluding that equitable estoppel cannot apply to the facts of this case?

6. Should this Court enter findings of fact and conclusions of law in accordance with § 3-2-204(5), MCA?

In 1984 and 1985, Gary and Carolyn Findley built and began operating a foster home known as the Kings Hill Youth Home (KHYH) in Meagher County near White Sulphur Springs, Montana. In September 1985, YCS inquired with the Findleys about placing an adolescent boy, B.I., as KHYH's first foster child. On October 2, 1985, YCS probation officer Warren Pearson took B.I. to KHYH to meet with the Findleys concerning the potential placement.

2

Gary Findley told Pearson that KHYH would need to charge $41 per day to care for B.I. The Findleys asked Pearson to sign a written contract under which they would provide services to B.I. and YCS would assure that they would be paid $41 per day. The Findleys produced a form contract which included blank spaces for the name of the child, the name of the party contracting with KHYH for placement, and the rate of compensation for the placement.

Pearson testified that he signed the form contract before he left KHYH that day only because Gary Findley insisted that Findleys needed the form to show the "treatment team" that KHYH and YCS were seriously considering a placement of B.I. The extent to which the blanks on the form contract had been filled in was disputed. At trial, Pearson testified that he signed a form contract which did not contain a daily rate amount, a date, or other signatures. He testified that he signed his name to a blank labeled "Representative/Title" and wrote in "Court Services" as the "Referring Agency" on the form contract.

Pearson further testified that he explained to the Findleys that YCS was responsible only for placement decisions for children adjudicated as youth in need of supervision, and that the Montana Department of Social and Rehabilitation Services (SRS) administered reimbursement of foster care providers. He testified that he repeatedly told the Findleys that he could not guarantee a daily payment rate.

The Findleys testified that B.I.'s name, "13th Judicial District Court Services" as the party contracting with KHYH, and

3

"$41" as the daily rate, had been filled in on the form contract before Pearson signed it. The Findleys told Pearson they would need several days to decide whether they could serve B.I. at KHYH.

Two days later, the Findleys decided to accept placement of B.I. at KHYH. Carolyn Findley testified that after inserting the date on the signed contract, she then mailed it to Pearson.

%.I. was adjudicated a youth in need of supervision and placed at KHYH. When the Findleys submitted their first monthly bill for foster care of B.I. to SRS, SRS informed them that the daily rate for foster care services in Montana was $11.63. That daily rate was paid to KHYH for services to B.I. through several years of subsequent negotiations between the Findleys and SRS. B.I. stayed with the Findleys for almost five years.

The Findleys brought this action in 1992 as a claim for contract damages. One party defendant, SRS, obtained summary judgment. Defendant Montana Thirteenth Judicial District Court reached a settlement with the Findleys. YCS was the only remaining defendant at the time of trial.

After hearing and reviewing the evidence submitted by the Findleys and YCS, the District Court entered its findings, conclusions, and order in favor of YCS. The court concluded that the form contract signed by Pearson and Gary Findley was not enforceable because it was substantially incomplete when the parties signed it--neither the date nor the rate amount having been filled in. From that judgment, the Findleys appeal.

4

Issue 1

Did the parties enter into a contract requiring YCS to pay $41 per day or an otherwise reasonable amount in return for the Findleys' services?

We will overturn a district court's findings of fact as clearly erroneous only if the facts are not supported by substantial credible evidence, the district court misapprehended the effect of the evidence, or we are left with a definite and firm conviction that a mistake has been committed. Interstate Production Credit v. DeSaye (1991), 250 Mont. 320, 323, 820 P.2d 1285, 1287. In reviewing conclusions of law, we determine whether the district court's interpretation of the law was correct. Steer, Inc. v. Department of Revenue (1990), 245 Mont. 470, 474-75, 803 P.2d 601, 603.

A contract is formed when: (1) identifiable parties capable of contracting; (2) give their consent; (3) to a lawful object; and (4) a sufficient cause or consideration is given. Section 28-2-102, MCA. A contract must contain all its essential terms in order to be binding. Riis v. Day (1980), 188 Mont. 253, 255, 613 P.2d 696, 697.

Pearson's testimony supports the finding that neither the date nor the rate amount were filled in when he signed the contract. The Findleys argue, however, that YCS subsequently consented to the terms of the contract by remaining silent, accepting the benefits of the contract, and allowing them to perform under it. They

maintain that an implied provision to make a reasonable payment arose from Pearson's and YCS's conduct.

Pearson testified that he repeatedly informed the Findleys that he was not able to authorize the expenditure of funds in any amount for foster care of B.I. There was no indication that Pearson in any way solicited the form contract; to the contrary, he testified that he signed the incomplete form only at Gary Findley's insistence to show the KHYH "treatment team" that there was a good faith placement effort. Gary Findley ultimately admitted during trial that he was aware that Pearson could not authorize any rate of pay for the placement of B.I. He also admitted that he knew YCS and Pearson were in charge of placement and SRS was responsible for payment for the placement.

We conclude that the District Court's finding that neither the date nor the rate amount was filled in when the parties signed the form contract is not clearly erroneous. As discussed above, the Findleys' theory that an implied provision arose is not persuasive and was rebutted. Therefore, we hold that the District Court's conclusion that no contract was formed is correct.

### Issue 2

Did the District Court err in finding that Carolyn Findley filled in the contract rate of $41 on October 4, 1985?

The Findleys assert there is no evidence in the record to support the court's finding that

> [t]wo days later, on October 4, 1985, the Findleys decided that they would take [B.I.], and Carolyn filled in the date of October 4, 1985, as well as the rate amount of $41 a day[.] [Emphasis supplied.]

6

As discussed above, Pearson testified that neither the date nor the daily rate amount were filled in when he signed the contract. Carolyn Findley testified that she filled in the date on October 4. The court apparently inferred that when Carolyn Findley filled in the date, she also filled in the rate amount.

A trier of fact may make inferences from the evidence. Section 26-1-501, MCA. Moreover, this finding was not essential to the conclusion that no contract was formed between YCS and the Findleys. We hold that the inclusion of this finding is not reversible error.

## Issue 3

Did the court err by finding that the Findleys' compensation was limited to sums paid by a non-party to the contract?

The Findleys' characterization of this finding in the statement of the issue is somewhat misleading. The court found that "SRS simply had no authority, and in fact, did not, pay foster homes more than the standard rate of $11.63 a day for each child." The Findleys criticize this finding as extraneous.

The Findleys are correct that this finding, like the one in Issue 2, is not essential to the court's decision. However, the finding is clearly supported in the record, and we hold that it does not represent reversible error.

## Issue 4

Did the court err by concluding there was no evidence that YCS ratified the contract?

"A contract which is voidable solely for want of due consent may be ratified by a subsequent consent." Section 28-2-304, MCA. In this case, the District Court concluded that "there is no evidence that Pearson ratified the later addition of the rate amount" to the form contract.

The Findleys point out that they have argued at least six points as evidence that YCS ratified the contract: YCS received the contract from the Findleys without objection and thereafter had B.I. placed with the Findleys; Pearson observed that the Findleys "delivered good service under the contract" and "performed their duties;" and YCS never objected to the $41 rate to the Findleys or anyone else--in fact, Pearson wrote to SRS and urged that the $41 rate be paid. The Findleys argue that while it may be proper for the District Court to disregard their evidence, it was not proper for the court to conclude that there was no evidence of ratification.

Ratification must be accomplished by one with the power to ratify. No such power has been demonstrated on the part of YCS under the facts of this case. The evidence offered by the Findleys is not inconsistent with YCS's position that it had no authority to agree to pay any amount for foster care services. Pearson's promise to the Findleys "to do the very best I could with SRS to secure the requested rate" did not commit any agency to pay the requested rate. Nor did his support for the Findleys in their efforts to obtain $41 per day for foster care commit any agency to

pay that amount.  None of the evidence offered by the Findleys establishes consent by YCS to pay the rate they demanded.

We hold that the District Court did not err in concluding that there was no evidence that YCS ratified the contract.

Issue 5

Did the court err by concluding that equitable estoppel cannot apply to the facts of this case?

The elements of equitable estoppel are:  (1) conduct amounting to a representation or concealment of material fact;  (2) these facts were known to the party estopped at the time of the conduct, or circumstances were such that knowledge is imputed; (3) the truth was unknown to the party claiming the benefit of estoppel when that party acted; (4) the conduct was done with the intention or the expectation that it would be acted upon by the party claiming estoppel or under such circumstances that it was both natural and probable that it would be so acted upon; (5) the conduct was relied upon by the party claiming estoppel, who was led to act upon it; and (6) the party claiming estoppel relied upon the conduct so as to change his position for the worse.  Mellem v. Kalispell Laundry (1989), 237 Mont. 439, 442, 774 P.2d 390, 392.

The District Court concluded that equitable estoppel did not apply because the evidence established that the Findleys knew after one month that they would be reimbursed only in the amount of $11.63 per day for foster care of B.I.  Instead of terminating their foster care relationship with B.I., they continued for nearly five years with no assurance that they would ever receive more than

9

the standard rate for foster care. The court's conclusion describes a failure of proof as to element 3 above. Nor did the Findleys establish element 1, misrepresentation or concealment of **material** fact, given the evidence that Pearson informed them from the very beginning that he had no authority to commit to a payment rate. We hold that the court did not err in concluding that the Findleys cannot recover on a theory of equitable estoppel

Issue 6

Should this Court enter findings of fact and conclusions of law in accordance with § 3-2-204(5), MCA?

This argument by the Findleys hinges upon their contention that the District Court made erroneous findings of fact and conclusions of law. They contend that because this is an equity case, this Court may substitute its own findings and conclusions and thus eliminate the need for rehearing on remand.

Because we have upheld the rulings of the District Court under all challenges here raised, we need not discuss this issue further.

We affirm the decision of the District Court.

_____
Chief Justice

We/concur:

_____

_____

_____

_____
Justices

10